**JUDGE FORREST**

**11 CIV 9297**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VYACHESLAV M. BURDMAN, Individually and on Behalf of All Other Persons Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CHINA MEDICAL TECHNOLOGIES, INC., WU XIAODONG and TAKYUNG TSANG, <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No.:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Vyacheslav Burdman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding China Medical Technologies, Inc. ("China Medical," "CMED" or the "Company"), analyst reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased American Depository Shares ("ADS") of China Medical between November 26, 2007 and December 12, 2011, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2.      China Medical is a medical device company based in Beijing that manufactures and markets immunodiagnostic and molecular diagnostic products for the detection of various cancers and diseases.

3.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's acquisition of Beijing Bio-Ekon Biotechnology Co. Ltd. ("BBE") was from a third party seller connected to China Medical's Chairman, Wu Xiaodong ("Wu"); (2) the Company overpaid by  approximately $20 million to acquire BBE; (3) the Company's acquisition of BBE involved the use of fraudulent shell companies; (4) according to the Company's filings with the Chinese State Administration for Industry and Commerce ("SAIC"), BBE was suffering operating losses prior to the acquisition; (5) the Company overstated accounts receivable in order to inflate sales and net income; (6) the Company's reported profit margins were inflated; and (7) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

2

4.       On September 7, 2011, on a blog on GEO Investing entitled ChinaResearch, a blogger identified as mbgizmo ("GEO Blog") exposed the substantial discrepancies between China Medical's SEC and SAIC filings.  GEO Blog further identified several suspicious or related transactions.

5.       On December 6, 2011, Glaucus Research Group ("Glaucus") published an analyst report revealing, in part, that China Medical's Chief Executive Officer was embezzling money through sham acquisitions, that the Company's reported profits and net income were inflated as they were inconsistent with comparable competitors, and that the majority of the Company's accounts receivable were in excess of 120 days, indicating that its reported revenues were inflated.

6.       On this news, China Medical's shares declined $0.81 per share, or nearly 24%, to close on December 6, 2011 at $2.57 per share, on unusually heavy trading volume.

7.       On December 13, 2011, China Medical disclosed that the Company intends to implement a debt restructuring plan to improve its balance sheet.

8.       On this news, China Medical's shares declined $0.43 per share, or nearly 13%, to close on December 13, 2011 at $2.87 per share, on unusually heavy trading volume.

9.       As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADS, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.       The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3

11.    This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

12.    Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), as the shares of China Medical were publicly traded in this District.

13.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

14.    Plaintiff, as set forth in the attached certification, purchased China Medical ADS at artificially inflated prices during the Class Period and has been damaged thereby.

15.    Defendant China Medical is a Cayman Islands corporation, with its principal place of business located at No. 24 Yong Chang North Road, Beijing Economic-Technological Development Area, Beijing 100176, People's Republic of China. China Medical's ADS trade on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "CMED."

16.    Defendant Wu Xiaodong ("Wu") has been the Company's Chairman of the Board and Chief Executive Officer during all relevant times herein.

17.    Defendant Takyung Tsang ("Tsang") has been the Company's Chief Financial Officer during all relevant times herein.

18.    The Defendants referenced above in ¶¶ 16 and 17 are sometimes referred to herein as the "Individual Defendants."

4

## SUBSTANTIVE ALLEGATIONS

**Factual Background**

19.     China Medical is a Cayman Islands corporation, originally incorporated in July 2004 as a listing vehicle. China Medical is a medical device company based in Beijing that develops, manufactures, and markets advanced in vitro diagnostic products using ECLIA, FISH and SPR technologies to detect and monitor various diseases and disorders.

### Materially False and Misleading
### Statements Issued During the Class Period

20.     On November 26, 2007, the Company issued a press release announcing that it had entered into a definitive acquisition agreement to purchase the entire equity interest in BBE. The press release represented the following, in relevant part:

> BEIJING, Nov. 26 /Xinhua-PRNewswire/ -- China Medical Technologies, Inc. (the "Company") (Nasdaq: CMED), a leading China-based medical device company that develops, manufactures and markets advanced in-vitro diagnostic ("IVD") products and high intensity focused ultrasound tumor therapy system, today announces that it has entered into a definitive acquisition agreement to purchase the entire equity interest in Beijing Bio-Ekon Biotechnology Co., Ltd. ("BBE") with a cash consideration of US $28.8 million. Subject to customary closing conditions, the acquisition is expected to close in January 2008. The Company expects the acquisition to be accretive from the quarter ending March 31, 2008, resulting in increases in the Company's revenues and adjusted non-GAAP net income. BBE's contribution will be fully reflected in the fiscal year ending March 31, 2009. This transaction is not subject to regulatory approvals.

> Founded in 1999, BBE commenced business in selling Enzyme-Linked Immunosorbent Assay ("ELISA") IVD products in China. In 2006, BBE launched its first semi-automatic ECLIA analyzer and related reagents upon receiving approval from the State Food and Drug Administration ("SFDA"). Since then, sales of its ECLIA products have been growing rapidly. BBE has sales offices in Beijing, Guangzhou, Wuhan, Qingdao and Chengdu to conduct direct sales and manage distributors in selling its products to over 800 hospitals in China.

> \*\*\*

> "The acquisition is in line with our strategy to expand in the advanced IVD segment and increase our ECLIA products' penetration in hospitals across China,"

stated Mr. Xiaodong Wu, Chairman and Chief Executive Officer of the Company. "BBE has a solid customer base of over 800 hospitals and certain of its reagents and MAIA-based fully automatic ECLIA analyzer can expand our product portfolio and provide us with new business opportunities in the testing of parasitic infections and food safety. BBE's direct sales experience will also be beneficial to us in formulating our sales strategies."

21.    On January 8, 2008, the Company issued a press release announcing that it completed its acquisition of BBE. The press release represented the following, in relevant part:

BEIJING, Jan. 8 /Xinhua-PRNewswire-FirstCall/ -- China Medical Technologies, Inc. (the "Company") (Nasdaq: CMED), a leading China-based medical device company that develops, manufactures and markets advanced in- vitro diagnostic ("IVD") products and high intensity focused ultrasound tumor therapy system, today announced that it has completed its previously announced acquisition (the "Acquisition") of the entire interest in Beijing Bio-Ekon Biotechnology Co., Ltd ("BBE"), a fast-growing ECLIA player in China. The Acquisition is expected to strengthen the Company's leading position in advanced IVD market in China.

The Company expects the Acquisition to be accretive immediately from the current quarter ending March 31, 2008, resulting in increases in both revenues and adjusted non-GAAP net income.

22.    On February 28, 2008, the Company issued a press release announcing its financial results for the third quarter ended December 31, 2007. For the third quarter, the Company reported net income of $13.4 million, or $0.48 diluted earnings per ADS ("diluted ADS") and revenue of $36.3 million, as compared to net income of $11.3 million, or $0.42 diluted ADS and revenue of $20.7 million for the same period a year ago.

23.    On June 12, 2008, the Company issued a press release announcing its financial results for the fourth quarter and full fiscal year ended March 31, 2008. For the fourth quarter, the Company reported net income of $11.3 million, or $0.23 diluted ADS and revenue of $66 million, as compared to net income of $11.4 million, or $0.27 diluted ADS and revenue of $57.2 million for the same period a year ago. For the year end 2007, the Company reported net income

of \$46.4 million, or \$1.70 diluted ADS and revenue of \$130.6 million, as compared to net income of \$70.8 million, or \$1.40 diluted ADS and revenue of \$70.82 million for year-end 2006.

24.     On June 27, 2008, the Company filed its 2007 annual report for the year ended March 31, 2008 with the SEC on Form 20-F, which was signed by, among others, Defendants Wu and Tsang, and reiterated the Company's previously announced financial results and financial position. In addition, the Form 20-F contained signed certifications by Defendants Wu and Tsang, stating that the financial information contained in the Form 20-F was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

25.     On August 4, 2008, the Company issued a press release announcing its financial results for the first quarter ended June 30, 2008. For the first quarter, the Company reported  net income of \$15 million, or \$0.42 diluted ADS and revenue of \$33 million, as compared to net income of \$6.79 million, or \$0.26 diluted ADS and revenue of \$19.9 million for the same period a year ago.

26.     On December 18, 2008, the Company issued a press release announcing its financial results for the second quarter ended September 30, 2008. For the second quarter, the Company reported net income of \$20.64 million, or \$0.61 diluted ADS and revenue of \$42.78 million, as compared to net income of \$10.3 million, or \$0.38 diluted ADS and revenue of \$28.68 million for the same period a year ago.

27.     On March 2, 2009, the Company issued a press release announcing its financial results for the third quarter ended December 31, 2008. For the third quarter, the Company reported net income of \$15.4 million, or \$0.60 diluted ADS and revenue of \$28.7 million, as

compared to net income of $13.4 million, or $0.48 diluted ADS and revenue of $59.3 million for the same period a year ago.

28. On September 1, 2009, the Company issued a press release announcing its financial results for the fourth quarter and full fiscal year ended March 31, 2009. For the fourth quarter, the Company reported net income of $15.5 million, or $0.31 diluted ADS and revenue of $36.3 million, as compared to net income of $15 million, or $0.53 diluted ADS and revenue of $40.53 million for the same period a year ago. For the year ended March 31, 2009, the Company reported net income of $53 million, or $2.02 diluted ADS and revenue of $121.5 million, as compared to net income of $46.4 million, $1.70 diluted ADS and revenue of $13.6 million for year-end 2007.

29. On September 1, 2009, the Company issued a press release announcing its financial results for the first quarter ended June 30, 2009. For the first quarter, the Company reported net income of $.43 million, or $0.02 diluted ADS and revenue of $62.7 million, as compared to net income of $15 million, or $0.42 diluted ADS and revenue of $33 million for the same period a year ago.

30. On September 30, 2009, the Company filed its 2008 annual report for the year ended March 31, 2009 with the SEC on Form 20-F, which was signed by, among others, Defendants Wu and Tsang, and reiterated the Company's previously reported annual financial results and financial position. In addition, the Form 20-F contained signed certifications by Defendants Wu and Tsang, stating that the financial information contained in the Form 20-F was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

31.     On November 19, 2009, the Company issued a press release announcing its financial results for the second quarter ended September 30, 2009. For the second quarter, the Company reported a net loss of $6.9 million, or $0.26 diluted ADS and revenue of $24.3 million, as compared to net income of $20.64 million, or $0.61 diluted ADS and revenue of $42.78 million for the same period a year ago.

32.     On March 3, 2010, the Company issued a press release announcing its financial results for the third quarter ended December 31, 2009. For the third quarter, the Company reported a net loss of $3.2 million, or $0.12 diluted ADS and revenue of $25.25 million, as compared to net income of $15.4 million, or $0.60 diluted ADS and revenue of $28.7 million for the same period a year ago.

33.     On June 4, 2010, the Company issued a press release announcing its financial results for the fourth quarter and full fiscal year ended March 31, 2010. For the fourth quarter, the Company reported net income of $1.3 million, or $0.05 diluted ADS and revenue of $25.8 million, as compared to net income of $15.5 million, or $0.31 diluted ADS and revenue of $36.3 million for the same period a year ago. For the year end 2009, the Company reported a net loss of $8.4 million, or $0.03 diluted ADS and revenue of $105.93 million, as compared to net income of $53 million, or $2.02 diluted ADS and revenue of $121.5 million for year-end 2008.

34.     On August 16, 2010, the Company issued a press release announcing its financial results for the first quarter ended June 30, 2010. For the first quarter, the Company reported net income of $5 million, or $0.19 diluted ADS and revenue of $27.5 million, as compared to net income of $.43 million, or $0.02 diluted ADS and revenue of $62.7 million for the same period a year ago.

9

35.     On September 8, 2010, the Company filed its 2009 annual report for the year ended March 31, 2010 with the SEC on Form 20-F, which was signed by, among others, Defendants Wu and Tsang, and reiterated the Company's previously announced financial results and financial position. In addition, the Form 20-F contained signed certifications by Defendants Wu and Tsang, stating that the financial information contained in the Form 20-F was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

36.     On November 17, 2010, the Company issued a press release announcing its financial results for the second quarter ended September 30, 2010. For the second quarter, the Company reported a net loss of $.44 million, or $0.02 diluted ADS and revenue of $30.17 million, as compared to a net loss of $6.9 million, or $0.26 diluted ADS and revenue of $24.3 million for the same period a year ago.

37.     On February 18, 2011, the Company issued a press release announcing its financial results for the third quarter ended December 31, 2010. For the third quarter, the Company reported net income of $11.46 million, or $0.43 diluted ADS and revenue of $33.9 million, as compared to a net loss of $3.2 million, or $0.12 diluted ADS and revenue of $25.3 million for the same period a year ago.

38.     On June 1, 2011, the Company issued a press release announcing its financial results for the fourth quarter and full fiscal year ended March 31, 2011. For the fourth quarter, the Company reported net income of $2.5 million, or $0.09 diluted ADS and revenue of $35.2 million, as compared to net income of $1.3 million, or $0.05 diluted ADS and revenue of $25.8 million for the same period a year ago. For the year end 2010, the Company reported net income of $12.6 million, or $0.48 diluted ADS and a revenue of $128.6 million, as compared to net

income of ($8.4) million, or ($0.03) diluted ADS and a revenue of $105.9 million for year-end 2009.

39.     On July 18, 2011, the Company filed its 2010 annual report for the year ended March 31, 2011 with the SEC on Form 20-F, which was signed by, among others, Defendants Wu and Tsang, and reiterated the Company's previously announced financial results and financial position. In addition, the Form 20-F contained signed certifications by Defendants Wu and Tsang, stating that the financial information contained in the Form 20-F was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

40.     On August 16, 2011, the Company issued a press release announcing its financial results for the first quarter ended June 30, 2011. For the first quarter, the Company reported net income of $5.5 million, or $0.21 diluted ADS and revenue of $36.7 million, as compared to net income of $5 million, or $0.19 diluted ADS and revenue of $27.5 million for the same period a year ago.

41.     On November 18, 2011, the Company issued a press release announcing its financial results for the second quarter ended September 30, 2011. For the second quarter, the Company reported net income of $5.2 million, or $0.20 diluted ADS and revenue of $37.4 million, as compared to a net loss of $.44 million, or $0.02 diluted ADS and revenue of $30.17 million for the same period a year ago.

42.     The statements referenced in ¶¶ 20-41 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them, including that: (1) the Company's acquisition of BBE was from a third party seller connected to Defendant Wu; (2) the Company

11

overpaid for BBE by approximately $20 million; (3) the Company's acquisition of BBE involved the use of fraudulent shell companies; (4) according to the Company's SAIC filings, BBE was suffering operating losses prior to the acquisition; (5) the Company overstated accounts receivable in order to inflate reported sales and net income; (6) the Company's reported profit margins were inflated; and (7) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

43.     On September 7, 2011, GEO Blog exposed the following regarding the gaping discrepancies between China Medical's SEC and SAIC filings:

> The due diligence investigation started from the comparison of SAIC vs. SEC reporting. As can see from below table [not included], there is 300mm difference between their local & SEC reporting. I can't tell why this is such a difference, but the main issues are mainly in 2007 and 2008 while they launched their "high profitable" FISH business.

44.     On December 6, 2011, Glaucus published an analyst report concluding that the seller of BBE was related to Defendant Wu, and that the Company substantially overpaid for BBE. The report stated, in relevant part:

> CMED paid $28 million for an acquisition from a seller who we believe was secretly related to CMED's chairman. Evidence also shows that CMED radically overpaid for the acquisition: a few months before selling the company to CMED, a company controlled by parties related to CMED insiders bought out minority shareholders at prices suggesting that the business was worth $5-$8 million, not the $28 million paid by CMED for the acquisition. In our opinion, CMED's chairman orchestrated an acquisition to embezzle roughly $20-$23million from the public company.

> \*\*\*

> CMED's balance sheet presents numerous highly suspicious red flags. CMED's receivables account for a much higher percentage of net revenues than its Chinese competitors and its Day Sales Outstanding are on average 141.9 days longer than a leading Chinese competitor, despite the fact that both companies sell similar products to similarly situated customers.

45.     On this news, China Medical's shares declined $0.81 per share, or nearly 24%, to close on December 6, 2011 at $2.57 per share, on unusually heavy trading volume.

46.     On December 13, 2011, China Medical announced that the Company intends to implement a debt restructuring plan to improve its balance sheet.

47.     On this news, China Medical's shares declined $0.43 per share, or nearly 13%, to close on December 13, 2011 at $2.87 per share, on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired China Medical ADS during the Class Period (the "Class"), and were damaged thereby.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

49.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, China Medical ADS were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by China Medical or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

50. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

51. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

52. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of China Medical;

- whether the Individual Defendants caused China Medical to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of China Medical ADS during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

53. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

14

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

54.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- China Medical ADS are traded in efficient markets;

- the Company's ADS were liquid and traded with moderate to heavy volume during the Class Period;

- the Company's ADS traded on the NASDAQ and were covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADS; and

- Plaintiff and members of the Class purchased and/or sold China Medical ADS between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

55.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

58. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of China Medical ADS; and (iii) cause Plaintiff and other members of the Class to purchase China Medical ADS at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

59. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for China Medical ADS. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about China Medical's finances and business prospects.

60. By virtue of their positions at China Medical, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain

16

and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

61.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of China Medical ADS from their personal portfolios.

62.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of China Medical, the Individual Defendants had knowledge of the details of China Medical's internal affairs.

63.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of China Medical. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to China Medical's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of China Medical ADS was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning China Medical's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased China Medical ADS at artificially inflated prices and relied upon the price of the

ADS, the integrity of the market for the ADS and/or upon statements disseminated by Defendants, and were damaged thereby.

64. During the Class Period, China Medical ADS were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of China Medical ADS at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said ADS, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of China Medical ADS was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of China Medical ADS declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

65. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's ADS during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against the Individual Defendants)

67.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.     During the Class Period, the Individual Defendants participated in the operation and management of China Medical, and conducted and participated, directly and indirectly, in the conduct of China Medical's business affairs. Because of their senior positions, they knew the adverse non-public information about China Medical's misstatement of income and expenses and false financial statements.

69.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to China Medical's financial condition and results of operations, and to correct promptly any public statements issued by China Medical which had become materially false or misleading.

70.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which China Medical disseminated in the marketplace during the Class Period concerning China Medical's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause China Medical to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of China Medical within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of China Medical ADS.

19

71.     Each of the Individual Defendants, therefore, acted as a controlling person of China Medical. By reason of their senior management positions and/or being directors of China Medical, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, China Medical to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of China Medical and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

72.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by China Medical.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: December 19, 2011

**POMERANTZ HAUDEK**
**GROSSMAN & GROSS LLP**
Marc I. Gross
Jeremy A. Lieberman
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ HAUDEK**
**GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Attorneys for Plaintiff*

## Certification of Plaintiff
## Pursuant to Federal Securities Laws

1.    I, Slava Burdman, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.    I have reviewed a Complaint against China Medical Technologies, Inc., ("China Medical"), and authorize a filing of a comparable complaint on my behalf.

3.    I did not purchase my China Medical securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my purchases and sales in China Medical securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

Executed _Dec 16, 2011_ , at _Needham MA_
     (Date)                         (City, State)

                                       (Signature)

                          Vyacheslav M. Burdman
                                 (Type or Print Name)

CHINA MED TECHS                          Burdman, Slava

LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 6/12/2009 | PUR | 50 | $24.5800 |
| 6/18/2009 | PUR | 50 | $22.2800 |
| 6/22/2009 | PUR | 100 | $22.4369 |
| 6/22/2009 | PUR | 50 | $22.4300 |
| 6/22/2009 | PUR | 100 | $20.8200 |
| 7/17/2009 | PUR | 150 | $18.7967 |
| 7/29/2009 | PUR | 250 | $18.7776 |
| 7/31/2009 | PUR | 500 | $15.8409 |
| 7/31/2009 | PUR | 150 | $14.5140 |
| 7/31/2009 | PUR | 350 | $14.5140 |
| 8/4/2009 | PUR | 500 | $15.8940 |
| 8/6/2009 | PUR | 500 | $15.5140 |
| 8/10/2009 | PUR | 500 | $15.0140 |
| 9/1/2009 | PUR | 750 | $13.5593 |
| 9/2/2009 | PUR | 700 | $11.7470 |
| 9/2/2009 | PUR | 300 | $11.7470 |
| 12/6/2011 | SLD | 700 | $2.6436 |
| 12/6/2011 | SLD | 300 | $2.6386 |
| 12/6/2011 | SLD | 500 | $2.6386 |
| 12/6/2011 | SLD | 500 | $2.6386 |
| 12/6/2011 | SLD | 500 | $2.6386 |
| 12/6/2011 | SLD | 500 | $2.6386 |
| 12/6/2011 | SLD | 750 | $2.6386 |
| 12/6/2011 | SLD | 350 | $2.6385 |
| 12/6/2011 | SLD | 150 | $2.6287 |
| 12/6/2011 | SLD | 250 | $2.6286 |
| 12/6/2011 | SLD | 150 | $2.6286 |
| 12/6/2011 | SLD | 100 | $2.6285 |
| 12/6/2011 | SLD | 100 | $2.6285 |
| 12/6/2011 | SLD | 50 | $2.6284 |
| 12/6/2011 | SLD | 50 | $2.6284 |
| 12/6/2011 | SLD | 50 | $2.6284 |